## In re VIVIAN A. SKAIFE IRREVOCABLE TRUST AGREEMENT # 1, Debtor.

### Bankruptcy No. 3–88–00919.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 13, 1988.

**326**

W.P. Boone Dougherty, Knoxville, Tenn., for debtor.

Morrison, Morrison, Tyree & Dunn, P.A., Douglas L. Dunn, Knoxville, Tenn., for Ruby Maples, Clydia Maples, Theo Maples and Loda Graves.

Egerton, McAfee, Armistead & Davis, P.C., Celeste H. Herbert, Knoxville, Tenn., for Glasco Corp.

E. Franklin Childress, Chattanooga, Tenn., U.S. Trustee.

## MEMORANDUM ON MOTION TO DISMISS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The debtor filed its voluntary petition under Chapter 11 of title 11 of the United States Code on April 7, 1988. On July 7, 1988, four creditors, Ruby Maples, Clydia Maples, Theo Maples, and Loda Graves (Movants), filed a motion seeking dismissal of the debtor's Chapter 11 case. By their motion, Movants contend that the debtor, a trust, is ineligible for relief under Chapter 11.[1] On August 5, 1988, Glasco Corporation, an unsecured creditor, filed a "Response To Motion To Dismiss" requesting the court to deny or defer action on the motion. The debtor filed its response to the motion to dismiss immediately prior to an evidentiary hearing held August 10, 1988.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2) (West Supp.1988).

### I

On September 28, 1977, the "Vivian A. Skaife Irrevocable Trust Agreement # 1" was created upon execution of an "Irrevocable Trust Agreement" (Trust Agreement) between Vivian Skaife, grantor, and Margaret R. Skaife, trustee.[2] The beneficiaries of the trust are the two children of Vivian R. Skaife, Barbara Busse and William A. Skaife, and their respective spouses, Durwood Busse and Margaret R. Skaife.[3] At the time the Trust Agreement was executed, the trust property consisted of 75,000 shares each of the common stock of Springtime Flowers Corporation and Anything Groes Corporation, 15,000,000 shares of the common stock of Honeyacre Corporation, and a number of patents, both foreign and domestic, and trademarks.[4]

Article II of the Trust Agreement requires the trustee to divide the trust assets into two separate trusts, one-third for Barbara and Durwood Busse and two-thirds for William A. and Margaret R. Skaife. Relative to the distribution of trust assets, Article II provides the following: for the respective beneficiaries of each trust to receive net income at least quarter annually; for encroachment by the trustee upon the principal of each trust for the benefit of the beneficiaries in the event the trustee determines the income of the beneficiaries from all sources "is not sufficient for their comfort and support"; and for encroachment upon the principal of each trust by the trustee for the benefit of the beneficiaries "for any purpose" even to the extent "that no useful purpose would be served by the continued existence of the

---

1. Additionally, Movants assert grounds for dismissal pursuant to 11 U.S.C.A. § 1112(b) (West 1979 & Supp.1988) premised on bad faith and the absence of a reasonable likelihood of rehabilitation. These grounds were not developed at the hearing on Movants' motion and will not be considered by the court.

2. The name "Vivian A. Skaife Irrevocable Trust Agreement # 1" has no identifiable origin. Whether the trustee chose this name as a convenience preparatory to the filing of the Chapter

11 petition, or the name is one of longstanding usage dating from the inception of the trust is not apparent from the record.

3. William A. Skaife and Margaret R. Skaife filed a joint voluntary petition under Chapter 11 of title 11 on April 14, 1988.

4. Honeyacre Corporation filed a voluntary petition under Chapter 11 of title 11 on April 21, 1988.

trust" if the trustee, in her discretion, "believes it to be in the best interests or for the well being of [the beneficiaries] or their family." Upon the death of the beneficiaries of each trust, the trust income and/or principal inures to the benefit of the children of the beneficiaries. Each trust terminates when there is no living child of the beneficiaries under twenty-five years of age.[5]

Article IV of the Trust Agreement vests the trustee with broad discretionary powers relative to the utilization and investment of trust assets: these include the power to retain, sell, exchange, and invest trust property; to borrow money "for any purpose"; to mortgage or pledge trust property; to receive and co-mingle with the trust estate additional property from any source; to purchase or acquire additional trust property; and to "operate, maintain, repair, rehabilitate, alter or remove any improvements on real estate."[6] Her authority appears to be limited only by those obligations imposed upon her by law as a fiduciary and by the terms of the Trust Agreement which require only that the powers be exercised with respect to each trust "as the Trustee in its discretion determines to be in the best interests of the beneficiaries."

## II

■ Bankruptcy Code § 109 provides in material part:

### Who may be a debtor

(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

. . . .

(d) Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker, and

a railroad may be a debtor under chapter 11 of this title.

11 U.S.C.A. § 109 (West 1979 and Supp. 1988).

Bankruptcy Code § 101(35) defines "person" to include an "individual, partnership, and corporation." 11 U.S.C.A. § 101(35) (West Supp.1988). Bankruptcy Code § 101(8)(A)(v) extends the definition of "corporation" to include a "business trust." 11 U.S.C.A. § 101(8)(A)(v) (West 1979).

Bankruptcy Judge George Proctor, discussing the characteristics of a business trust, notes:

> The basic distinction between business trusts and nonbusiness trusts is that business trusts are created for the purpose of carrying on some kind of business commercial activity for profit; the object of a nonbusiness trust is to protect and preserve the trust res. The powers granted in a traditional trust are incidental to the principal purpose of holding and conserving particular property, whereas the powers within a business trust are central to its purpose. It is the business trust's similarity to a corporation that permits it to be a debtor in bankruptcy.

*In re Treasure Island Land Trust,* 2 B.R. 332, 334 (Bankr.M.D.Fla.1980).

The debtor contends it is a business trust premised upon paragraph 1.(1) of Article IV of the trust agreement which provides for utilization of the trust assets for business purposes. It argues that ownership by the trust of business-related assets including stocks in certain corporations, a ninety-three acre farm utilized to implement "Skaife method technology," and patents is indicative of the business nature of the trust. The debtor, however, does not take into account that paragraph 1.(1) of Article IV of the Trust Agreement is only one of thirteen broadly defined categories in which the trustee is empowered, in her discretion, to utilize trust assets in furtherance of the purposes of the trust. No

---

**5.** The provisions of Article II, synopsized herein by the court, are extensive.

**6.** The trustee's discretionary powers are defined at paragraph 1. of Article IV of the Trust Agreement in thirteen subparagraphs labeled (a) through (m).

provision in the Trust Agreement compels the trustee to operate a business; nor is she precluded from terminating operations at any time.

The Trust Agreement will not lend itself to construction as a business trust. The object and purpose of the trust is clearly elicited from a review of Article II of the Trust Agreement: to provide assets for the "comfort and support" of the two children of Vivian A. Skaife and their spouses. Article IV delineates powers the trustee may utilize in furthering that goal.

In a 1985 district court opinion out of the Eastern District of Missouri, Judge Hungate observed:

It is well established that a business trust is something more than simply a trust that carries on a business. *Hecht v. Malley,* 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924). The distinguishing characteristics of a business trust include:

1. a trust created and maintained for a business purpose;

2. title to property held by trustees;

3. centralized management;

4. continuity uninterrupted by death among beneficial owners;

5. transferability of interests; and

6. limited liability.

*Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). Essentially, Congress included business trusts in the Bankruptcy Code definition of a corporation as a person because of their similarity to corporations. *See Associated Cemetery Management Inc. v. Barnes,* 268 F.2d 97 (8th Cir.1959).

*Mosby v. Boatmen's Bank of St. Louis County (In re Mosby),* 61 B.R. 636, 638 (E.D.Mo.1985). *See also Matter of Betty L. Hays Trust,* 65 B.R. 665 (Bankr.D.Neb. 1986).

The trust established by Vivian A. Skaife on September 28, 1977, was by its terms created to preserve and protect assets for the benefit of Mrs. Skaife's children and their spouses. Business activities are but one of the options to be considered by the trustee in promoting the purposes of the trust. The distinguishing characteristics of

a business trust as enumerated by the district court in *Mosby* are not present in the Trust Agreement.

The court is mindful of the contrary result in *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985), wherein "[t]he trust documents ... empowere[d] the trustee to take all actions necessary to hold, preserve, and manage all ... property." *Id.* at 711. Judge Yacos, grounding his decision upon the business operations conducted by the trust, characterized it as a business trust thus insuring its eligibility for relief under Chapter 11.

Without a more detailed analysis of the trust documents, this court must respectfully disagree with the result reached in *Gonic.* An examination of the trust documents is essential to a just determination of whether a trust qualifies as a business trust eligible for relief as a debtor under 11 U.S.C.A. § 109 (West 1979 and Supp.1988). To hold otherwise in the instant case would make eligibility for relief dependent upon the whim of the trustee. At any given time the trust might or might not be eligible for bankruptcy relief depending upon whether the trustee, in her discretion, was engaging in business operations rather than in one of the other options afforded her under Article IV of the Trust Agreement.

The court concludes that the trust in the instant case is a family trust created exclusively for the benefit of the grantor's children and that the conduct of business activities is but one of a number of methods by which the trustee may further the purpose of the trust. The motion to dismiss the debtor's Chapter 11 case will accordingly be granted. The request of Glasco Corporation to deny or defer action on the motion to dismiss will be denied.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.