**In re BKC REALTY TRUST, Debtor.**

**Bankrupcty No. 90–12215.**

United States Bankruptcy Court, D. New Hampshire.

March 1, 1991.

Mark Vaughn, Devine Millimet, Manchester, N.H., for debtor.

Joseph Foster, McLane, Graf, Raulerson & Middleton, Manchester, N.H., for Citizen's Nat. Bank of Elkins.

J. Michael Deasy, Deasy & Dwyer, P.A., Nashua, N.H., for Wheeling Dollar Bank.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

■ This Court once again faces the thorny question of which trusts qualify as a "business trust" under the Bankruptcy Code when Congress provided no definition. In *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985), I established that the trust at a minimum must be doing business to qualify. Then, in *In re Woodsville Realty Trust,* 120 B.R. 2 (Bankr.D.N.H.1990), I added the additional requirement that the trust "must have at least some of the attributes of a corporation to qualify as a bankruptcy debtor." *Id.* at 4. Today, I complete my analysis by imposing the final requirement for a trust to be a business trust, i.e., that it be formed for a business or commercial purpose.

### FACTS

The BKC Realty Trust was formed on March 12, 1987. The trustee is Dewey B. Burrett of Salem, New Hampshire. The beneficiaries are his three sons. The trustee conveyed all of the assets to the trust which include: an apartment building in West Virginia; an industrial plant in West Virginia that is leased to a corporation owned by the trustee; a ranch in Wyoming; and, an office building in New Hampshire.[1] The express purpose of the trust is to hold these properties for the benefit of the beneficiaries.[2] The Trustee also testified that

1. The first mortgagee to this property got relief from the automatic stay on February 22, 1991 so this property will no longer remain a trust asset.

2. The trust reads (emphasis added):
4. A. The *purposes* for which the Trust is formed and the functions to be carried on by the Trustee(s) are *limited to holding the record legal title of the Trust Assets for the benefit of the beneficiaries.* The Trust shall not engage in any functions other than the holding of record legal title to the Trust Assets and such functions as are necessarily incidental thereto, and is intended to be merely a nominee trust, so-called for Federal and State income tax purposes.
B. Except as herein provided in the case of the termination of this Trust, the Trustee(s) shall have no power to deal in or with the Trust Assets except as directed in writing by all of the beneficiaries. Upon such direction,

the Trustee(s) may borrow money, sell, mortgage or otherwise dispose of all or any part of the Trust Assets, lease all or any part thereof by one or more leases for a term or terms which may extend beyond the date of any possible termination of this Trust, grant or acquire rights and easements, guarantee obligations of the Beneficiaries and secure such guarantees by a mortgage on the Trust Assets, enter into agreements or arrangements with respect to the Trust Assets, acquire property and leasehold interests in property, and take such other action as the Beneficiaries may direct, provided, however, that the Trustee(s) shall not be required to take any action so directed which will, in the opinion of the Trustee(s), involve them in any personal liability unless first indemnified to the satisfaction of the Trustee(s).
The Trustee(s) shall not be required to inquire into the propriety of any direction re-

his idea was to manage the property until he got older when his sons would take over. The trust assets apparently generate profits and losses, but income is not an express purpose of the trust.

## DISCUSSION

The First Circuit, years ago, focused on the purpose of an alleged business trust, as well as its attributes to a corporation. In *Pope & Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132, 134 (1st Cir.1941) (emphasis added) the court stated that business trusts include:

> ... unincorporated associations of persons joining together at least in part for some common business or commercial purpose, *and* conducting their affairs somewhat after the pattern of corporations.

The Court in *Pope & Cottle* found the trust before it failing to meet both requirements. The court found it had a family trust before it. After reviewing other defects, the court explained:

> It does not appear that the two named beneficiaries associated themselves together to contribute capital for the business to be conducted under the name of Fairbanks Realty Trust. We were informed at the argument that the beneficiaries made no such contribution and that they were, respectively, the mothers of the two trustees. Aside from the fact that the trust instrument gives the trust a formal name it does not appear that the Fairbanks Realty Trust is anything other than a *family trust* set up for the benefit of relatives.

*Id.* at 133 (emphasis added).

Similarly here, the beneficiaries made no contribution of capital[3] and they are obviously closely related to the trustee. The express purpose of the trust is to hold land in the family. The testimony adduced a secondary purpose was to generate "gift" income for the beneficiaries. Clearly, the only reason the beneficiaries associated

themselves was to receive a family gift. This type of trust was found objectionable in *In re Ralph Faber Trust*, 113 B.R. 599, 600, 601 (Bankr.D.N.D.1990) where the court explained:

> Ralph Faber prior to his death in 1988 was a farmer in Ransom County, North Dakota. In order to ensure the longevity of the farming operation in 1983 he created an irrevocable trust called the "Ralph Faber Trust" for the express purpose of holding, managing, investing and reinvesting the trust property until the death of his last surviving child.
>
> \* \* \* \* \* \*
>
> In the case at bar, the principal asset of the trust is the twelve quarters of farmland which the trust is to manage for the benefit of the grantor's son and the grandchildren. All powers and duties of the trust relate to the preservation of the farm. The trustee himself testified that the purpose was to ensure the farm's longevity.

This is not the only Code case to find an alleged business trust was in reality a family trust. In *In re Margaret E. DeHoff Trust I*, 114 B.R. 189, 190, 192 (Bkrtcy.W.D.Mo.1990), the court reasoned how a trust doing business could be a family trust:

> On January 1, 1990, settlor Margaret DeHoff executed an irrevocable inter vivos trust naming herself as beneficiary and a grandson, Judson White, Jr., was later made a co-trustee. It is clear from the terms of the trust instrument that the trust was intended as and in fact is a classic estate-planning trust to provide for the support of Margaret DeHoff for her life and for disposition of the assets of the trust to family members after her death.
>
> \* \* \* \* \* \*
>
> The trust property ... included a tract of real estate on East Sunshine, a busy commercial street in Springfield; stock in a cattle business known as Hidden Valley

---

ceived from the Beneficiaries. Any person dealing with the Trustee(s) shall be fully protected in accordance with the provisions of Paragraph 8 hereof.

3. Interestingly, the trustee testified that if he sold a trust asset he would first reimburse himself for his investment and then distribute profit to the beneficiaries.

Land and Cattle Company, located on 1500 acres on non-contiguous tracts in three Missouri counties; and one-third ownership of a company known as Associated Computers.

\* \* \* \* \* \*

... the trust was not established to carry on commercial activities for profit for investors. Rather, it was established primarily as a family estate-planning scheme to provide for the maintenance of Margaret DeHoff, and then for distribution of various assets to family members including grandchildren and greatgrandchildren. The court concludes that the Margaret DeHoff Trust I is not a debtor eligible for relief under Title 11.

Finally, in *In re St. Augustine Trust,* 109 B.R. 494, 495 (Bankr.M.D.Fla.1990) the court found the trust at issue in that case was merely a family trust. The court explained:

The trust agreement, which created an entity known as St. Augustine Trust, provides for the transfer of certain real property from the settlor [Bruce] to the trustee, directs that two-thirds of all assets be divided into two equal trusts for the benefit of Bruce's minor children, and directs that the remaining one-third be divided into three separate trusts for the benefit of two adult daughters and his stepson. (The stepson is Welsh, who is also the trustee.)

\* \* \* \* \* \*

By Bruce's admission, the trust was created as an estate planning device rather than for a distinct business purpose. The trust was initially funded by Mr. Bruce by the conveyance of real property to the trustee under the terms of the trust rather than by pooling resources of investors or beneficiaries or by selling shares. Thereafter, Bruce retained control of the trust assets.

\* \* \* \* \* \*

Operating in this method, Bruce has developed some properties, including, among others, a movie theatre in Orlando and a warehouse/office complex in Jacksonville. It is without dispute, therefore, that the trust engages in real estate development.

■ Under this case law, I am compelled to conclude the trust at issue is a family trust. In making the ruling I am not unmindful that the trust assets produce profits and losses and have arguably enough of the attributes of a corporation to qualify under *Woodsville.*[4] Still, the purpose of the trust must conform to the dictates of *Pope & Cottle Co, supra,* and this trust does not. All the beneficiaries have contributed is their name. As one court has stated, a qualifying trust must be "created to transact business for the benefit of investors." *In re Medallion Reality Trust,* 103 B.R. 8, 11 (Bankr.D.Mass.1989). The purpose of this trust is not to have the beneficiaries receive a return on any investment but to receive a family gift.

Debtor argues that the lack of an outside investor is not a necessary requirement where the beneficial interests are transferable. It is true that in *Pope & Cottle* and the Code cases noted above that all of those cases involved a restriction on transferability. However, I must reject the debtor's argument. The testimony of the trustee was that he expected the sons to take over the running of the business assets when he gets older, and it appears to me transferability was not a contemplated occurrence when this trust was executed, or if it was, the transfer would occur only between family members. Regardless, even if there was a sale to an outside party, the original beneficiaries will receive the value of their trust interest and have risked nothing for it, which is exactly what they intended.

## CONCLUSION

This trust is a family trust and not a business trust within the meaning of the Bankruptcy Code. To qualify as a business trust the trust must not only being

4. At the hearing, I expressed concern that the trust documents stated the trust was a nominee trust but the trust was run in fact with the trustee in control. However, I find it unnecessary to resolve the "attributes" part of the equation in this case.

doing business, and have some of the significant attributes of a corporation, but also must have been formed primarily for a business purpose. This trust fails at least with regard to the latter requirement.[5]

### ORDER

For the reasons stated in the Memorandum Opinion contemporaneously filed this day, this case is dismissed because the debtor is not qualified to file a bankruptcy petition.

DONE and ORDERED.

---

**5.** As indicated in footnote 4 above the Court finds it inappropriate to address the second requirement.